Good morning, Illinois Appellate Court, First District Court is now in session. The Fourth Division, the Honorable Justice Jesse G. Reyes presiding, case number 20-1190, Timothy Parker v. Illinois Labor Relations Board. Thank you, Mr. Schaffer. Good morning, ladies and gentlemen. We apologize for the delay, but we had some technical difficulties and we had to iron out, but we're now ready to proceed. First, would counsels who are going to argue this morning, please identify yourselves for the record and then what party you're representing. Good morning, your honors. Cass Thomas Casper for Petitioner Appellate, Timothy Parker, who for the record is present in the room with me, but will not be speaking. Okay, morning. Assistant Attorney General Ben Jacobson on behalf of State Respondent, Illinois Labor Relations Board Local Panel. Okay. Good morning, your honors. Assistant State's Attorney, Colleen Harvey on behalf of the Cook County Sheriff's Office in Cook County. All right, so Ms. Harvey, Mr. Jacobson, do you want to split up the 15 minutes between each of you or do you want to proceed? Yes, we will be splitting. I'll take eight minutes and my co-counsel will be taking seven. Okay. Ms. Harvey, is that agreeable? Yes. All right. Okay. Having set the ground rules in terms of 15 minutes apiece, Mr. Casper, you want some time for rebuttal? Yes, your honor. I'd like to reserve three minutes for rebuttal if allowed. Okay. All right. You have three minutes. So, Mr. Casper, proceed. Good morning, your honors. May it please the court. My name is Cass Casper. I We're here today on a single, we submit narrow issue, which is whether or not the Illinois Labor Relations Board erred when they declined to adopt the finding of the ALJ and the proceedings below that Timothy Parker was subjected to a transfer pending investigation that was motivated by anti-union animus in violation of 10A1 and section 10A2. Mr. Casper, just so the record's clear, there were several issues that were presented to the ALJ, but you're only proceeding on one of the issues, correct? That's correct. And we're only focused on section two, Roman numeral two, three of the board's decision. That's the only decision that petitioner or portion of the decision petitioner appellate seeks to reverse in this court today. Thank you. Proceed. Thank you. So, the nuts and bolts of that section is basically whether or not Timothy Parker, correctional officer, his transfer pending investigation, we call it an article you move at the Cook County Sheriff's office, was motivated by retaliatory animus in violation of 10A1 and 10A2. In a nutshell, officers at the jail, when they have a pending investigation against them, the Cook County Sheriff's office may move them out of their bidded division pending the outcome of that investigation. We call it a SEAM, Sheriff's Employment Action, article you move. That happened to Tim Parker in July, 2016. He was subjected to an article you move, and he was moved out of his bidded assignment in division six into another area of the Department of Corrections. Big picture, this had the effect of undermining him completely as a union steward. The evidence below was that he was a particularly effective, aggressive union steward, would send emails to the administration and to his superiors talking about working conditions and standing up for the rights of his members in division six. By moving him out of division six, it deprived him of the day-to-day contact with his fellow officers. It deprived him of the ability to hear their grievances, to hear their complaints. Basically, it took all the power out of his stewardship responsibilities. In fact, the record evidence below was that he subsequently did not continue as steward in division six. Our position is that moving him out of division six actually was effective to eliminate his power as a steward. Are you saying that they didn't have any other means of communicating with him if they had a complaint, that they couldn't communicate with their steward because he moved? We're not saying that, but what we're saying is that because he would be in the division on a day-to-day basis and interacting with officers while working in the division, it substantially undermined his effectiveness as a steward. He couldn't walk down the tier in division six and hear a complaint from a fellow officer. He couldn't take breaks and hear the complaints of the fellow officers. It basically would relegate the communication between Parker and fellow officers in division six via phone or email, which is a whole lot less effective than seeing his fellow officers on a day-to-day basis when he's actually working the same shift tier breaks with them. That's the fundamental issue about why his move out of division six was so critically undermined his stewardship responsibility. In any event, what happened in this case is at the labor board proceeding, Mr. Parker proved, we submit to a T, that the transfer was retaliatory as a matter of the city of Burbank, that's a case, retaliate circumstantial factors. Two of those factors are suspicious timing and evidence that other employees who do not engage in protected activity were not subjected to the same adverse actions. It's a comparability analysis. Then from proof that other employees were not subjected to the same adverse action, it creates this inference that while Tim was subjected to it because of retaliatory animus. We proved that. Yes. Yeah. I know that I can't, I think it's Michalewski and can't remember the other guy's name testified that they were not transferred. That's correct. Six, but there were several other people who were transferred out of six who had pending use of force investigations. Do you know how many of them were or were not union stewards? Because I didn't see that in the ALJ's report and I didn't see any consideration of that. Candidly, your honor, we'd have to go outside the record to make that determination because there's no record evidence, whether those other employees who were transferred were stewards or not, it's not in the record. And so we submit, I can't really reference that for the court. And we'd have to take additional evidence of that issue at the labor board to determine that. However, uh, let me get to that issue. We submit that the full board's consideration of the fact that while there were two other employees who were subjected to article U that turns the Burbank standard on its head, because it's not the charging party's job to prove that the employer was consistently applying its policy. It's the charging party's job to prove that other employees who did not engage in protected activity were not subjected to the same adverse action, which is what Parker did here. He said, Etzel, Willie Etzel, Michalowski, they were working in the same division. They had use of force incidents. Neither of them were subjected to an article you move in summer, 2016, they were both supervised by Julian, the same supervisor who supervised Parker. Moreover, at this is, and this is key. Etzel and Michalowski were not even brought to the attention of administration for a potential article you move. And what happened is Julian put Etzel and Michalowski on his own on a no contact spot in division six. And that's in talked about in my brief on page 11, whereas Julian immediately the same day as Parker's use of force sends an email to administration, Matt Burke, and says, Parker's been involved in a use of force. I'm summarizing. We need to transfer them. And then Burke does that. Yeah. Yeah, I'm sorry. I thought I read and you can, you can correct me if I'm wrong, that Etzel and Michalowski actually did have an article. You said article six article you transfer, they just weren't transferred out of six. They actually, if I may, they actually did not have were put on what's called no inmate contact assignments within article within division six, they were never subjected to article you. So they were allowed to continue working in the same division. They weren't brought because article you to be triggered administration has to approve that, which is why this wound up Parker's wound up before Matt Burke to approve it. Etzel and Michalowski, they weren't even put through that process. It was just Julian puts them a no inmate contact spots within the division. Whereas Julian immediately notifies Matt Burke and says, please transfer a Parker subject to article you, which immediately within minutes, Matt Burke then does. And that part of the process we submit that shows that why did he actually ask for the transfer? I thought the email was a little more just here it is. I'm sorry, I'm characterizing. I don't mean to misstate the record, but our, and you're right, judge, it wasn't that express. But our point is, is Julian emailed Matt Burke right away to notify him of Parker's use of force. That's our point. And then Burke turns around and within minutes between 1247, when Julian sends the email and 108, Matt Burke actually puts Parker on you. But what's key here, your honor, is that Julian doesn't do that for Etzel or Michalowski. He never does that at all. And that's why the difference in treatment between Etzel and Michalowski and between Parker is so strange. And we submit gives rise to an inference that Julian was motivated by the same retaliatory animus for Parker as what he was found to have in the other aspects of this case that which are not here today. Well, what about the argument that Mr. Parker used excessive force and that also the Department of Justice was scrutinizing the sheriff's department's use of disciplinary action against their officers? What about that argument? There's two problems with that argument, your honor. First of all, it's policy considerations are not a part of the retaliation analysis. Like the Burbank factors nowhere talk about the charging party having to disprove that there's a policy-based reason for the adverse action or that the board has discretion to consider policy-based reasons for an action. It's basically we're saying we didn't know that policy considerations were even a part of the legal standard in play here. Had we known that, had Parker known that, we probably could have addressed that with evidence at the board and talk about how this didn't affect the consent decree or the Department of Justice. Our point is the board changed the legal standard. We never knew that policy considerations were part of the standard because Burbank doesn't make them part of the analysis. In fact, no case does, your honors. And that's key. The board, they never cite a decision and neither do my learned colleagues across the aisle that says policy-based considerations should be part of the retaliation analysis. No one cites that case. And frankly, if the law were to make that part of the standard, that would be fine, but it's unfair to hold Tim Parker to that standard after the evidence is closed at the hearing. And we never have the opportunity to address it with evidence that there wasn't any animus involved in it. I mean, you're characterizing that evidence as policy, but it was an evidentiary presentation and not a legal argument. The issues about the Department of Justice intensely scrutinizing use of force at the jail, that, your honor, was not part of the evidentiary proceedings at the board. That was not part of the sheriff's justification. There was testimony about that. But it wasn't done in the context of, for example, determining whether or not the sheriff was motivated by retaliation. That's the fundamental issue, was the article you motivated by retaliation? And yes, Matt Burke did reference, well, we are under Department of Justice scrutiny, but that's sort of apples and oranges. Like the fact that they're under Department of Justice scrutiny for use of force, that doesn't mean that Parker's transfer wasn't therefore retaliatory, right? And furthermore, Matt Burke is not, he's sort of the cat's paw, we say. Like Julian sends him the email about the Article U, and then Matt Burke executes it. And Matt Burke may have had concerns about the Department of Justice, but we're saying Julian had the retaliatory animus. And Matt Burke specifically, this is in the record, I will, I've got the testimony. Matt Burke says it was the information from Julian. This is record 698. Matt Burke says this. The information from Julian caused him to do the Article U transfer. So yes, the Department of Justice consideration may be out there some way, but it's not relevant to the decision making in this case as it actually played out. Well, that's a different argument than saying they changed the legal factor that's involved. It's a second sub point, I would say. I would say that there's two dimensions to our argument, that Matt Burke didn't actually rely on the Department of Justice analysis. And number two, that the board's focus on this, the way it framed it in its decision, with all due respect, it was unfair because we didn't consider at the outset, do we have to disprove that the Department of Justice's concerns wouldn't be implicated in this transfer? We didn't do that because it wasn't part of the evidence. That's our argument about that. Okay, can I ask you this question? If Julian had just done, put him on, Mr. Parker, on, you know, no contact assignment, but still within Division VI, would we be sitting here today listening to a complaint that there was, that that was done in retaliation? Is it simply because it was a Yes, because that's the factor that undermined Parker's ability to interact with his fellow officers on a day-to-day basis. That's the factor, the transfer out that eliminated his effectiveness as a steward. Also, this is in the weeds here, there's a lot more overtime available in Division VI. And because Parker was moved out of Division VI, he was no longer entitled to earn it. So there's a big overtime claim that's really in the backdrop here that would probably have to be decided on remand if this court were to agree with us. So that's the other factor is the overtime. All right, Mr. Casper, you have three minutes for rebuttal. What do you want to sum up right now? Yes, Your Honor, we're just asking that Tim Parker request to adopt the ALJ's decision on the article you'd be adopted. We submit that we proved everything we needed to do according to Burbank standards, and the board was in error to impose these additional requirements that weren't part of that test. Thank you very much, I'll reserve for rebuttal. All right, thank you. Mr. Jacobson? Thank you, and may it please the court again, Assistant Attorney General Ben Jacobson on behalf of State Respondent Illinois Labor Relations Board Local Panel. The board's determination that because its findings that underlay that determination, including that he failed to show anti-union animus for the transfer, were supported by evidence in the record. Alternatively, even if he did establish a prima facie violation, then the board's finding that Parker's use of force incident would have reached Burke regardless of Tate and Julian's involvement was likewise supported by evidence in the record, and because evidence supports those findings, they're not against the manifest way to the evidence. Parker's arguments to the contrary ask this court to reweigh the evidence and substitute its judgment for that of the board, which is not how direct administrative review is conducted. Excuse me, Mr. Jacobson, what about Mr. Casper's argument that they never really got a chance to address the policy issue because it was all said and done after they became aware of this policy that the Sheriff's Department was implementing? Your Honor, I think that that argument doesn't point towards reversing the policy. I think that Parker testified pretty extensively about the Department of Justice scrutiny, and there was an opportunity to cross-examine him and re-cross-examine him and present evidence to the contrary, and Parker himself actually testified regarding the fact that Superintendent Julian was frequently out of Division 6 around this time period, the first half of 2016, dealing with Department of Justice personnel who were there because of this intensive scrutiny. So to the first element, the fact that they didn't have a chance to respond, that's evidence in the record. They had the chance to present counter-evidence, and the burden remains on the individual bringing the charge at all times. As for the legal argument, the City of Burbank factors aren't set in stone. There are recommendations from the Supreme Court on certain things that the board may consider and the courts may consider when looking to identify anti-union animus, and the core concern with anti-union animus is what were the factors motivating the decision to transfer or here to transfer the individual out of the division, and a fact about that motivation is was there intense scrutiny at the time influencing the front office to be more proactive and a little more aggressive in moving individuals out of the division in a use of force incident. And in addition, I wanted to try and clarify a few evidentiary issues with the record. Those three other individuals that were the three out of division six around that same time due to use of force incidents, that was testimony in the record, including from, I pronounced him Michael Chusky. I think that may not be the correct pronunciation, so I apologize if that's incorrect. He testified about one of those officers. Lieutenant Hurd testified about the other two officers. That is evidence in the review that evidence is sufficient to support the board's finding that there was no differential treatment between officers who were stewards and non-stewards who were transferred around that time. I read this quickly, but I thought there were actually, and if you lose me, my internet is very unstable. It just said that, but I thought that there was a Tobias Jackson transferred out, a Malone, and a McCray, and a Meza, and an Ortiz. I thought there were five different people who were transferred out, not just three or two. Yes, your honor. There were, I believe it was five or six, there were five named individuals who were moved out of their divisions around that time. However, the three of those that you mentioned, Meza, McCray, and Malone, were the ones who were also in division six like Parker. Jackson and Ortiz, one of them was in division two and one of them was in division eight, so they're not as strong evidence. They're not as indicative because they didn't have the direct supervisors, Tate and Julian, who were determined by the board to have anti-union animus towards Parker. Also, I want to point out that Parker has forfeited any argument regarding those three officers by not addressing them before the ALJ, or the board, or in his opening brief. Under Illinois Supreme Court Rule 341H, you're not supposed to be able to bring up an argument that you failed in your reply brief or an oral argument that you failed to bring in your opening brief. I do have one more question, and would your position be that even if and therefore Julian's animus didn't transfer to Burke? Jackson, were you able to hear the question? You broke up a little bit, so I just want to make sure I understood your question. You were asking if even if there's animus from Julian and he was the one who sent that email to Burke, who was the ultimate decision maker? Because he has other reasons for... It would have gotten to him anyway, based upon the fact that it was a chokehold, that it was the scrutiny and the collective bargaining agreement says they can move people. Yes, Your Honor, that's exactly our position. In the board's decisions that deal with whether or not the animus of a direct supervisor can be imputed to a neutral ultimate decision maker, the board has held that where the incident report or whatever would have reached that ultimate decision maker, regardless of the tainted actions of the direct supervisor, that then the animus does not get imputed to the ultimate decision maker. And here, there was... Parker and Julian both testified that all use of force incidents go to the use of force review unit. The documentary evidence established that Parker's incident was rated a level three preliminarily, which is the most egregious level, and Burke testified that when there's a level three designation, that will always come to his desk from the use of force review unit, and that testimony went uncontradicted. So that the incident report would have reached him eventually through that alternate channel, and thus the animus from Tate and Julian cannot be imputed to Burke. And I also just want to highlight again that Julian's email to Burke did not recommend anything at all. It just said, here is an incident report, and that was it. There was no commentary on that. And I want to make sure I'm not eating into my co-counsel's time. I think we're probably reaching about that point. Yes. So if you'd like to sum up, that would be great. Yes. Thank you, Your Honor. Here, we're on direct administrative review. These are factual findings that are issue animus and motivation. They're factual findings, so they get manifest weight. There's evidence in the record supporting those findings, and to the extent that there could be evidence supporting the other direction, that does not make a finding against the manifest weight of the evidence, because the courts in review don't reweigh or substitute their judgment. And there's plenty of evidence here supporting the board's findings, and its ultimate decision was based on those findings. So we ask that this court affirm the decision of the board. Thank you. Thank you, counsel. Ms. Harvey? Yes. May it please the court. My name is Assistant State's Attorney Colleen Harvey, and as I mentioned before, I'm representing the respondents Cook County Sheriff's Office in Cook County. The board's decision on Parker's Article U transfer should be affirmed. As my co-counsel mentioned, the board's counsel mentioned this determination as to whether Parker's Article U transfer out of Division 6 constituted an unfair labor practice is a mixed question, reviewed for clear error. However, the board's findings of fact are deemed prima facie true and correct, unless they are against the manifest weight of the evidence, and there is no evidence in the record to support it. Here, the board's findings were not in clear error. Instead, they were supported by facts in the record, and Parker failed to show that anti-union animus was a motivating factor in his transfer. Now, the board did note a few of my arguments, but I'm just going to highlight a few of them. In finding that Parker did not establish an unfair labor practice, the board determined he did not show anti-union animus on the part of the decision maker. And on that point, I just want to highlight that again, that Superintendent Julian, while he did forward to Burke the incident report, he did not make any recommendation that Mr. Parker should be transferred out of Division 6, which is the main complaint of Mr. Parker. And on that basis, Parker cannot show that Burke's decision to transfer him out of Division 6 was tainted by Superintendent Julian or Commander Tate. And I think we've addressed that, you know, the board's determination that Parker's comparator evidence did not establish disparate treatment was not clear error. As the board's counsel mentioned, the charging party appellant here basically ignored evidence in the record that other non-steward officers were transferred pending investigations and were not assigned within their division. And there also is evidence in the record that Michalowski, who was one of Parker's comparators, actually did file the grievance regarding his transfer, which would constitute union activity. He was still, you know, maintained an assignment in Division 6. And I also wanted to point out, I know an issue came up earlier about basically that Parker is maintained an assignment within Division 6. There is evidence in the record that there were only a certain number of limited detainee contact assignments within Division 6. And Mr. Parker did not establish that, you know, those were available at the time, that he could have been transferred there. He just simply did not establish that that was a possibility. And that, along with the evidence in the record that there were only a very limited number of those assignments, you know, leans towards the board's findings here. Can I ask you a couple of questions about the comparators? Were they transferred to within the those complaints have gone through the Use of Force Review Board that then sends the issues to Burke? Sure. Well, as far as your question, it refers to the comparators that Parker presented, Michalowski and Ezell, that did occur around the same time when the Department of Justice scrutiny, I think it was all in a period in 2016. And they were transferred to limited detainee contact assignments within Division 6 after following alleged use of force incidents. Now, the point, I think, is that they were transferred to limited detainee contact assignments, just like Parker was. And the record, as I mentioned, is not established that there was a position available for Parker within Division 6 at the time of his incident. But then, as I mentioned, also, there is other evidence that other individuals were transferred at the same time. And that evidence is unrebutted and actually were transferred out of Division 6 of other divisions. But did the complaints regarding Michalowski and Ezell go through the review board or review entity that sends things to Burke? And was that done in their cases? Well, that is something that is undeveloped in the record. And again, you know, and that is not something that was developed in the record. Thank you. I have a question. There's an implied argument in the briefs that this transfer was done expeditiously. And it appears that maybe the implied argument is that it was done more expeditiously than others. What is the regular process? I mean, was this one conducted a lot more quickly than other disciplinary transfers? Well, this transfer, it was a serious potential violation. And there is, I guess, again, there is no evidence in the record that this was treated any differently other than the fact that the incident report did come from Superintendent Julian to Burke. But again, as I think my co-counsel mentioned, the report was reviewed by the use of force unit, which is regular procedure, was designated as a level three, which is one of the more severe incidents and would have eventually been reviewed by the executive staff due to that designation. And so there's nothing here as far as that deviated from the regular process. And I think it's also important to note that I know Mr. Parker has focused on this short time that elapsed between Superintendent Julian's email and Burke's response directing that Parker be transferred. But I think that that really goes to the fact that the sheriff's office was concerned about use of force incidents and took immediate action to remove Mr. Parker from an assignment where he has more contact with detainees to prevent further incidents from occurring. So just to briefly wrap up, I just want to also point out that even if this court determined that Parker had established a prima facie violation, the sheriff's office has still presented a reasonless pretext. And on that basis, the appellant's arguments that the board's findings were not supported by the record simply ignore the evidence here. And if there are no other questions, we ask that you affirm the board's decision. Any other questions from the panel? No. Okay. Thank you, Ms. Harvey. Thank you. Mr. Gasper, rebuttal? Yes, your honors. Thank you. Two points in rebuttal. In the city of Burbank, the Illinois Supreme Court is clear that the Labor Relations Board must determine whether the legitimate reason advanced was truly relied upon by the decision makers in the analysis for retaliation. On page 35, appendix 57, from the ALJ's ruling, she recognizes, quote, Chief of Staff Burke testified he relied solely on the complaint register in making the determination to transfer Parker. So from Burke's own testimony, he said he did not rely on the Department of Justice, he did not rely on the CBA, he did not rely whether there was a vacancy of a no-inmate contact spot. He relied solely on what was sent to him in Julian's email. That's what he said. So the only true reason relied upon by Burke was that email. And the board's error was in imputing other rationales into Burke's mind that he did not rely on in its final decision. The ALJ got this right in finding that Burke was implicitly relying on Julian's anti-union animus, and this court should so find and adopt the reasoning of the ALJ in this regard. One other point. With respect to the three individuals officers transferred out of Division 6, the sheriff could transfer four people out of Division 6 and not be motivated by retaliatory animus in three, and motivated by retaliatory animus in one, Parker. That's what happened here. And the focus on the other three transfers, with respect, it misanalyzes the Burbank standard. And so for that reason, that's no reason to affirm the board's ultimate decision in this matter. With respect, we'd ask that this court grant the relief sought in the petition. Thank you very much. If there's no further questions. Any questions from the panel? No? Okay. All right. Thank you, Mr. Casper. Thank you, counsels, for a well-argued matter and an interesting case, and we will take it under advisement. At this time, we're adjourning this matter and moving on to our next oral argument.